[Nos. 687-8.]

## STATE OF NEVADA, APPELLANT, *v.* CONSOLIDATED VIRGINIA MINING COMPANY, RESPONDENT; AND STATE OF NEVADA, APPELLANT, *v.* CALIFORNIA MINING COMPANY, RESPONDENT.

DEFAULT—EXCUSABLE NEGLIGENCE.—Two suits were brought against the Consolidated Virginia Mining Company, and two against the California Mining Company, for delinquences and penalties for the non-payment of taxes. The complaint and summons in each case were served upon J.

G. Fair, the managing agent of each corporation. He delivered the same to the regularly retained attorney for both corporations, with the request that the papers should be properly attended to. The attorney appeared and filed a demurrer in one of the suits against the Consolidated Virginia Mining Company, and also in one of the suits against the California Mining Company. Defaults were regularly entered in each of the other suits. The attorney of the corporation makes an affidavit that he had never known or heard of but one suit against each corporation, and had no recollection of but one complaint and summons having been left with him; that while unable to state positively that but one complaint and summons was left, he avers unqualifiedly that if more than one was left he did not apprehend it at the time; and that if he had known that more than one was left he would have appeared and filed a demurrer in each suit, as the questions to be litigated were the same in each action: *Held*, that the failure of the attorney to appear in both actions was an honest mistake, without fraud or negligence on the part of the corporations, their superintendent, or attorney, and that the facts stated in the affidavits, presented on motion to set aside the defaults, made out a case of excusable neglect.

IDEM—AFFIDAVIT OF MERITS.—The attorney for defendants, in his affidavit, avers that he is familiar with all the facts upon which a recovery is sought in said actions; that he believes, and has so stated to defendants, that the defendants have a good and meritorious defense to each of said actions; that the subject-matter of said actions is *res adjudicata*, etc.: *Held*, sufficient.

IDEM—ENTITLING AFFIDAVITS.—The affidavits used on motion to set aside default, were simply entitled "State of Nevada, Storey County:" *Held*, that inasmuch as the affidavits intelligibly referred to the respective actions, the fact that they were not properly entitled therein was immaterial.

OBJECTIONS—WHEN MUST BE MADE IN THE COURT BELOW.—Technical objections to the introduction of papers or to the form of an order, which could readily have been cured if taken in the court below, will not be considered for the first time in the appellate court.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts appear in the opinion.

*Frank V. Drake*, District Attorney of Storey County, for Appellant.

I. The affidavits used in support of the motion were not entitled in any cause, nor in any court; nor did they intelligibly refer to any cause pending or determined in any court; nor did they set out any facts from which the court

could infer that a default had been entered in any specific cause or court. (*Pike* v. *Powers*, 1 How. Pr. 53; *Higham* v. *Hayes*, 2 Id. 27; *Whipple* v. *Williams*, 1 Mich. 115; *Arnold* v. *Nye*, 11 Id. 456; *Saunders* v. *Erwin*, 3 Miss. 732; *Humphrey* v. *Cande*, 2 Cowen, 509.)

II. The order was made without the condition precedent required by the statute. The right to the order is a statutory privilege, and can be obtained only by following the terms of the statute. (Sec. 1131 Comp. Laws Nev. (sec. 68, Pr. Act); *Pugsley* v. *Van Allen*, 8 Johns. 351; *People* v. *O'Connell*, 23 Cal. 281.)

III. The affidavits are wholly insufficient to meet the requirements of the statute. (Freeman on Judgments, sec. 112, and cases there cited; 3 Wait's Pr. 667–670, and cases cited; *Mulholland* v. *Heyneman*, 19 Cal. 605; *Coleman* v. *Rankin*, 37 Id. 247; *Hancock* v. *Pico*, 40 Id. 153; *Reiley* v. *Ruddock*, 41 Id. 312; *Chase* v. *Swain*, 9 Id. 130; *Ekel* v. *Swift*, 47 Id. 620; *Ins. Co.* v. *Swineford*, 28 Wis. 263; *Green* v. *Goodlow*, 7 Mo. 25; *Weimer* v. *Morris*, 7 Id. 6; *Heisterhagen* v. *Garland*, 10 Id. 66; *Langdon* v. *Bullock*, 8 Ind. 341; *Harrison* v. *Kramer*, 3 Clarke (Iowa), 554; *Harper* v. *Mallory*, 4 Nev. 448.

IV. The record discloses a good and perfect service in each case against each company and against each mining claim, under sections 3155 and 3233, Compiled Laws. The publication in the newspaper constituted a complete personal service as to the defendant corporation, and the posting of the copies of those published notices on the mining claim created a good service against the realty.

V. The affidavits as to a statement of a defense on the merits, are wholly insufficient. (Freeman on Judgments, sec. 108; *Brownell* v. *Marsh*, 22 Wend. 636; *Lecompte* v. *Walsh*, 4 Mo. 557; *Briggs* v. *Briggs*, 3 Johns. 257; *Brittan* v. *Peabody*, 4 Hill, 61; *Hunt* v. *Wallis*, 6 Paige, 377; *Winship* v. *Jewett*, 1 Barb. Ch. 173; *Bailey* v. *Taaffe*, 29 Cal. 422; *Rich* v. *Hathaway*, 18 Ill. 548; *People* v. *Rains*, 23 Cal. 127; *Goldsbery* v. *Carter*, 28 Ind. 59.)

VI. Where a default is regular, defendant cannot be allowed to insist upon any grounds of defense which are technical, or dishonest, or which are in the nature of a

penalty or forfeiture, or which are not entitled to the favor of the court. (Freeman on Judgments, sec. 108; *King* v. *Merchants' Ex. Bank*, 2 Sand. 693; *Parker* v. *Grant*, 1 Johns. Ch. p. 630; *Hawes* v. *Hoyt*, 11 How. Pr. 455; *People* v. *Rains*, 23 Cal. 127.)

*C. J. Hillyer*, for Respondent.

The failure to plead was not the result of any negligence or inattention on the part of the defendants, their agent, or attorney, or of any failure on the part of either to do all that is usual and proper for prudent men to do under similar circumstances. The failure was the result of an accident, seemingly unavoidable by the exercise of ordinary and proper diligence, even at the present time inexplicable, and of such unusual character that it would be most unreasonable to apprehend its repetition. There is no subject-matter in reference to which appellate jurisdiction is exercised with so much deference to the opinion and action of the inferior court as that of relieving from defaults on the ground of accident, surprise, inadvertence, or excusable negligence. (*Howe* v. *Coldren*, 4 Nev. 171; *Harper* v. *Mallony*, 4 Id. 447; and cases cited in dissenting opinion; *Conley* v. *Chedic*, 7 Id. 340; *Woodward* v. *Backus*, 20 Cal. 137; *Francis* v. *Cox*, 33 Id. 323; 41 Id. 20; 46 Id. 63; 14 Johns. 342; 5 How. Pr. 461; 9 Abb. Pr. 160; Wait's Pr. vol. 3, p. 665.) *Res judicata* is a meritorious defense. (10 Abb. Pr. 64.)

By the Court, Hawley, C. J.:

These cases, presenting precisely the same questions, were argued, and will be decided together.

The records show that on the twenty-fifth of June, 1877, the plaintiff, the State of Nevada, brought four suits, two against the defendant, the Consolidated Virginia mining company, and two against the defendant, the California mining company, for the recovery of certain alleged delinquencies and penalties claimed to be due on account of delinquent taxes for two quarter years. The complaint and summons in each suit were regularly served upon J. G.

Fair, the managing agent and superintendent of the defendants, by the sheriff of Storey county, on the twenty-ninth day of June, 1877.

The defendants appeared and filed a demurrer in one of the suits against the Consolidated Virginia mining company, and in one of the suits against the California mining company, and made default in each of the other suits. Judgment having been entered by default in these suits the defendants appeared, and moved the court to set the judgments aside, and to open the defaults. In support of these motions, the defendants presented the affidavits of J. G. Fair, the superintendent of defendants; C. J. Hillyer, the attorney for defendants, and A. H. Ricketts, a clerk in the office of said attorney. The court granted the motion, and the plaintiff appeals.

The affidavit of the superintendent shows that when he was served with the copies of complaints and summons he took them, according to his usual custom, to C. J. Hillyer, an attorney regularly employed on a salary to attend to the legal business of said defendants, and left them with said attorney after making the request that they should receive proper attention. He "remembers well there was more than one complaint, but whether or not there were more than two he does not remember; but he is confident he delivered to the attorney all the papers served upon him by the sheriff." After being assured by the attorney that the papers would be attended to he left the attorney's office, and shortly thereafter wrote to the president and board of trustees of the respective companies in San Francisco, California, that suits had been commenced for the recovery of penalties for the non-payment of taxes, and that the papers had been placed in the hands of their attorney, with instructions to defend the same. He further says "that he is informed by his attorney, who is familiar with all the facts, and fully believes that each of said companies has a good and meritorious defense to the certain cause of action in the respective suits in which a default has been entered."

The affidavit of C. J. Hillyer affirms the statements made by the superintendent in respect to his connection with the

suits.   He states that until Sunday, the tenth day of September, 1877 (after the judgments by default had been entered), he had never known or heard of more than one suit against each of said companies for the collection of penalties exclusively, to wit, the two suits in which demurrers were filed; that a copy of the complaint and summons in one suit against the Consolidated Virginia Mining Co. to recover thirteen thousand four hundred and twenty-one dollars and twenty-five cents, and one suit commenced against the California Mining Co. to recover fifteen thousand seven hundred and three dollars and thirty cents, were brought to him by the superintendent of the defendants on the twenty-ninth day of June, 1877; that about the eighth day of July, being about to go to San Francisco, he made a draft of a demurrer to each of said complaints, and gave the same to his clerk, with instructions to make two copies in each case, and file one with the clerk and serve the other on the district attorney (which the affidavit of the clerk shows was done); that he has no recollection of ever having seen or had in his possession either of the complaints or any other papers in either of the suits in which defaults were entered; "that while, from the nature of the case, he cannot affirm positively that no such papers were ever shown him, he can state unqualifiedly that if so he did not apprehend it at the time, and that he never had a suspicion that those suits had been commenced until he learned it by telegram of Saturday last from Mr. Fair.   In corroboration of the belief that such papers were not in his possession, affiant states that neither himself nor any other person, to his knowledge, has ever had any occasion to remove from his office any papers connected with these tax suits, and that immediately after learning of the judgments by default, affiant made a thorough search through all the papers in his office, and that none connected with any suits for penalties, except the two in which demurrers had been filed, were found."

"Affiant further says that had he known of the commencement of the said suits he would have filed therein at the proper time demurrers in the same form as those actually

filed in the other two suits, commenced on the same day, the questions to be litigated in each case being substantially the same."

"Affiant further says that he is familiar with all the facts upon which a recovery is sought in said action, and fully believes, and has so stated to the defendants, that the defendants have a good and meritorious defense to each of said actions, and are not in fact liable for any portion of the amount therein claimed, and also that the subject-matter of said action is *res adjudicata*, and that this, in the opinion of affiant, sufficiently appears on the face of the complaints, but if not, that it can be made fully to appear by answer."

"Affiant further says that there is not, and has not been, any desire on the part of defendants to delay a hearing in said action upon the merits."

A. H. Ricketts deposes and says, after confirming the statements of Mr. Hillyer as to the instructions about the preparation and filing of the demurrers in the two suits, and the performance of that duty upon his part pursuant to said instructions, " that neither from Mr. Hillyer, nor from any other source did he learn, or have any reason to suspect that any more than two actions were then pending for taxes against said companies in which pleadings had not been filed; that he first learned that four actions, instead of two, had been commenced in the month of June, after judgment by default had been entered in two of said causes on the seventh instant; that on learning this and being satisfied that there had been some mistake, and thinking it possible that Mr. Hillyer might either have overlooked the papers or have neglected to give instructions in relation to them he, in the absence of Mr. Hillyer, who was in San Francisco, examined thoroughly the legal papers in his office and found there two copies of complaints filed June twenty-fifth, with summons attached, and no papers whatever in relation to any other suits for tax penalties, and affiant is confident no such papers were in the office. The copies of complaints found were both for the recovery of penalties for non-payment of tax for the quarter ending December 31, 1876."

We think these affidavits presented sufficient facts to authorize the court to set aside the judgment obtained by default, and to open the defaults and allow defendants to appear and interpose any defense they might have.

It is very true, as was argued by appellant's counsel, that there is no satisfactory proof as to what became of the two missing complaints and summons. The return and affidavit of the sheriff is positive that he did personally serve the superintendent with four copies, one in each suit, on the twenty-ninth day of June, 1877. It was the duty of the superintendent to deliver these copies to the attorney for the defendants, and he is confident that he did so deliver *all* the papers that were served upon him. If so, there was no fault or negligence on his part. The attorney seems to have acted in good faith. It may have been an oversight on his part in not immediately examining all the papers brought by Mr. Fair, instead of simply examining "one of the complaints for the purpose of seeing the general nature of the suit," but certainly it was not such an act of negligence in omitting to do so, at that time, as would authorize the court to refuse to open up the default upon this ground merely. The defendants, notwithstanding the fact of a perfect service having been made by publication, in addition to the personal service upon the superintendent, had the right to believe, from the letter of their superintendent, that their attorney would file the necessary papers in all the suits. But without noticing all the points urged by the district attorney in his brief, we are of opinion that the fact that the defendants appeared in two of the cases shows conclusively that their attorney was ignorant of the existence of the other two suits, and that it was owing to an honest mistake which occurred in some unexplained manner, without any positive fault or negligence upon his part, or upon the part of the defendants or any of their agents, that demurrers were not filed in all the suits. There is no reason why demurrers should have been interposed in the two cases and not in the others. The suits were identical in character, and if any defense could be made in one it could in all. The facts here, although of an entirely different nature, are

as strong in favor of setting aside the judgment and opening the default as in *Howe* v. *Coldren,* 4 Nev. 171, and the decision in that case upon the facts was expressly concurred in by the court in *Harper* v. *Mallory,* Id. 447; but a majority of the members of the court dissented from some of the reasons given in *Howe* v. *Coldren,* upon the general subject of opening defaults.

It is difficult to establish a rule upon this subject that would be applicable to all cases, as every case must necessarily be determined upon its own peculiar facts. We think the facts in these cases, as presented in the affidavits referred to, bring the defendants within the rule of the statute which authorizes the court, "upon such terms as may be just, and upon payment of costs," to "relieve a party, or his legal representatives, from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect" (1 Comp. Laws, 1131), and are of opinion that the action of the court below in opening the defaults should be sustained.

The affidavits as to the merits are, in our judgment, sufficient. (*Howe* v. *Coldren, supra; Woodward* v. *Backus,* 20 Cal. 137; *Francis* v. *Cox,* 33 Cal. 323.)

The affidavits were prepared to be used, and were used, in the two cases wherein the defaults had been entered. The fact that they were not properly entitled in these actions is immaterial, as they do intelligibly refer to the respective actions in which the defaults were entered. (1 Comp. Laws, 1568.) But if the objection of appellant possessed any merit, it should have been made in the court below, and not urged for the first time in the appellate court. (*Longabaugh* v. *V. and T. R. Co.,* 9 Nev. 292.)

The form of the order is also objected to by appellant. The court made the orders setting aside the defaults and opening the judgments, and added: "It is further ordered by the court that said defendants do pay the costs of this proceeding," instead of granting the relief, upon the payment of costs, in the language of the statute. This objection, like the last, might readily have been cured if taken in the court below at the time the order was made, and for

the reasons stated in *Longabaugh* v. *V. and T. R. Co.*, *supra,* cannot be urged for the first time in the appellate court.

The orders appealed from are affirmed, and the district court will fix a reasonable time within which the respective defendants will be allowed, upon the payment of the costs in these proceedings in the court below, to plead to the respective complaints. Each party to pay its own costs on appeal.