JOSEPH E. WAGNER, Appellant, *v.* M. O. ANDER–
SON, Respondent.

No. 3458

November 14, 1946.                    174 P. 2d 612.

*Virgil H. Wedge,* of Reno, for Appellant.

*R. S. Flanary,* of Sparks, for Respondent.

## OPINION

By the Court, Eather, J.:

The record in this case presents an appeal from an order made and entered in the district court of Washoe County on February 1, 1946, denying defendant's motion

to set aside a default judgment entered against said defendant on October 15, 1945.

On September 18, 1945, plaintiff commenced an action against defendant to recover $1,348.72 as actual damages and $4,000 exemplary damages on account of the injuries inflicted upon plaintiff by defendant by an alleged assault committed on September 8, 1945.

On September 18, 1945, defendant, while an inmate of the Washoe County general hospital at Reno, Nevada, was served with process in said action.

On October 1, 1945, no appearance having been made by defendant, his default was entered and on October 15, 1945, a judgment was given against said defendant in the amount of $5,348.72, representing $1,348.72 as actual damages and $4,000 as exemplary damages, with costs in the amount of $29.90.

Defendant on December 1, 1945, filed and served a motion to vacate and set aside the default and judgment. The motion was based upon the ground that the same resulted from mistake, surprise, and excusable neglect of defendant. A verified answer was presented with the motion. The motion was supported by the affidavit of defendant, and the following statements therein contained are admitted:

"That on September 8, 1945, while in the City of Sparks, Washoe County, Nevada, the defendant was shot several times with a gun by the present plaintiff and others; that one of the bullets from said gun entered his face at the point of his chin, emerging from the right side of his throat; that one bullet entered the right side of his chest but failed to emerge from his body; that one bullet entered the left side of his chest, emerging from his back immediately below the left shoulder blade; that one bullet entered his left hand at the middle knuckle and emerged at the knuckle of the left forefinger; that on that same date and as a result of being forcibly thrown to the ground by a police officer, his right shoulder blade was shattered and broken; all of which left the defendant in a serious physical condition; that

he was immediately taken to the Washoe County General Hospital at Reno, Nevada, for treatment; that soon after arrival at the hospital he was chained to a bed, thereby restraining and restricting his freedom; that while so restrained and restricted and on or about September 18, 1945, a cómplaint in the above-entitled case was filed against defendant and defendant was served with summons."

And further, that due to his physical condition as the result of his gunshot and other wounds, he was unable to offer any defense and answer; that he first learned of the entering of judgment against him on Otcober 29, 1945, and thereafter employed an attorney.

The record further shows that before the same court wherein the motion to set aside the default was pending and about December 17, 1945, defendant was adjudged insane and by the court ordered committed to the Nevada state hospital. Further in support of the motion it was established that prior to the hearing and on December 20, 1945, a petition for a guardian ad litem for defendant was filed in said cause. This petition was supported by an affidavit of a doctor who examined defendant on December 17, 1945, and from his examination stated that defendant was suffering from maniac depressive psychosis, and was insane; that in the opinion of the doctor defendant was insane on September 8, 1945, and for some time prior thereto, and remained insane at all times from September 8, 1945, to December 19, 1945. That from September 8, 1945, to December 19, 1945, defendant was incapable of transacting ordinary business. The record contains no denial of this statement of facts. Upon the showing a guardian ad litem was appointed for defendant.

In opposing the motion plaintiff called several witnesses, among whom was another doctor. He testified that on September 16, 1945, "he was called to treat and perform an operation on defendant; that between September 16, 1945 and December 15, 1945 he treated and observed defendant. * * * That as a result of his

observation he deemed defendant to be mentally unbalanced at all times from September 16, 1945 to December 15, 1945." He testified that during said period the defendant made no request nor inquiry to him in regard to obtaining legal counsel.

The substance of plaintiff's showing in opposition to the motion was developed by several witnesses. From this testimony it was established that immediately after the affray defendant was removed to the Washoe general hospital for treatment of his injuries and placed in custody of guards appointed by the sheriff of Washoe County; that defendant at no time during this period requested legal counsel to defend the action. When process was served upon him he inquired the name of attorneys representing the Bank of America. On or about October 15, 1945, he requested a nurse in attendance "to obtain legal counsel to aid him in making a gift to the nurses at the hospital." At the conclusion of the hearing the court denied the motion.

Respondent contends that after being served with process and up to the time that defendant's default was entered, the record shows that he made no effort to obtain legal assistance in defense of the action. Therefore his conduct was inexcusable. The admitted facts established, however, that during all this period defendant was mentally and physically ill; his mental condition was such that sheriff's guards were continually in attendance. In addition to the broken jaw defendant suffered from several gunshot wounds and the right shoulder blade was shattered and broken.

■■ 1. We are of the opinion that upon the showing made, the default and judgment should have been set aside, upon the grounds of excusable neglect, and defendant permitted to answer. Adhering to the law many times announced by this court, we have no other alternative. Section 8640, N. C. L. 1929, as amended, is a remedial statute and should be liberally construed. This construction of the statute has been announced so frequently that citation of authorities is unnecessary.

The contention of respondent under the admitted facts would require the application of a formula which would measure defendant's legal responsibility for failure to answer by the same yard sticks as would be applied to an individually mentally and physically fit. The mental and physical condition of a litigant has many times been considered by the courts in setting aside default judgments. Swisshelm Gold Silver Co. v. Farwell, Ariz. 124 P. 2d 544; Fink & Schindler Co. v. Gavros, et al., 72 Cal. App. 688, 237 P. 1083; Salsberry v. Julian, 98 Cal. App. 638, 277 P. 516.

■ The contention is made that the tendered answer admits the assault by defendant upon plaintiff and that the resulting condition of defendant at that time is not material and therefore a meritorious defense is not shown. The answer does not deny the assault, but alleges affirmatively that defendant was insane when the assault was committed. The judgment rendered in this action awards in addition to compensatory damages, the sum of $4,000 as exemplary damages. The answer tenders an issue as to defendant's legal responsibility for punitive damages by reason of his insanity. If, as alleged by defendant, he was insane when the assault was committed, proof of such fact may relieve him of legal responsibility for exemplary or punitive damages. To this extent, therefore, a meritorious defense is made. See 28 Am. Juris. 734, sec. 101; 32 C. J. 751, sec. 549. See also 44 C. J. S., Insane Persons, p. 126.

The order appealed from is reversed with directions to the district court to set aside the default and judgment and permit defendant to answer upon such terms as may be just and reasonable.